# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| TNC KAZCHROME JSC, <br><br>            Plaintiff, <br><br>    v. <br><br> UNITED STATES, <br><br>            Defendant, <br><br>    and <br><br> CC METALS AND ALLOYS, LLC AND FERROGLOBE USA, INC., <br><br>            Defendant-Intervenors. | Court No. 25-00128 |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.2 <u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Christine M. Streatfeild
Nathaniel J. Halvorson

**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

Date: May 1, 2026

*Counsel to Plaintiff TNC Kazchrome JSC*

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II. ARGUMENT ........................................................................................... 3

    A.  ERG's ownership was disclosed as of May 14, 2024 ...................... 3

    B.  Commerce was not deprived of an opportunity to investigate ERG's ownership ................................................................................. 7

    C.  Commerce's AFA determination is unlawful because no "gap" existed on the record and Kazchrome fully cooperated at all times ............................................................................................... 17

        1. No "gap" existed because no information was missing ........... 17

        2. The Government has failed to rebut the applicability of the transnational regulation in effect at the time ........................ 19

        3. Commerce's instruction to report corporate structure "etc." does not provide a basis to apply AFA .................................... 21

        4. Commerce failed to meet the statutory threshold for relying on facts otherwise available .................................................... 24

    D.  Commerce's determination should be remanded to reverse the AFA finding and conclude no subsidy benefits were provided to Kazchrome ...................................................................................... 26

III. CONCLUSION ...................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clearon Corp. v. United States,*
359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) ......................................... 20

*Corinth Pipeworks Pipe Indus. SA v. United States,*
633 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) .................................... 9, 10

Gerber Food (Yunnan) Co. v. United States,
387 F. Supp. 2d 1270 (Ct. Int'l Trade 2005) ……………………………... 18

*Hyundai Steel Co. v. United States,*
518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ......................................... 23

*Meihua Grp. Int'l Trading (H.K.), Ltd. v. United States,*
686 F. Supp. 3d 1359 (Ct. Int'l Trade 2024) ......................................... 16

*Mukand, Ltd. v. United States,*
37 C.I.T. 443 (Ct. Int'l Trade 2013), aff'd, 767 F.3d 1300 (Fed. Cir.
2014)……………………………………………………………………….. 25

*Nippon Steel Corp. v. United States,*
337 F.3d 1373 (Fed. Cir. 2003) ............................................................ 24

*Shelter Forest Int'l Acquisition v. United States,*
2026 Ct. Int'l Trade LEXIS 14 (Jan. 28, 2026) ................................... 23

*Steel Authority of India, Ltd. v. United States,*
149 F. Supp. 2d 921 (Ct. Int'l Trade 2001) .......................................... 25

*Sugiyama Chain Co. v. United States,*
797 F. Supp. 989 (Ct. Int'l Trade 1992) ........................................... 9, 10

*Tau-Ken Temir LLP v. United States,*
147 F.4th 1363 (Fed. Cir. 2025) ......................................................... 16

*Zhejiang Dunan Hetian Metal Co., Ltd. v. United States,*
    652 F.3d 1333 (Fed. Cir. 2011) ...................................................... 18, 25

**Statutes**

19 U.S.C. § 1677e(a) ......................................................................... 18, 23

19 U.S.C. § 1677e(a)(1) ........................................................................... 20

19 U.S.C. § 1677e(b)(1) ........................................................................... 24

19 U.S.C. § 1677m(c)(1) ........................................................................... 23

19 U.S.C. § 1677m(e) ............................................................................... 23

**Regulations**

19 C.F.R. § 351.527(a) ........................................................................ 19, 20

**Administrative Determinations**

*Ferrosilicon from Republic of Kazakhstan: Final Affirmative*
    *Countervailing Duty Determination*, 99 Fed.
    Reg. 14,108 (Dep't of Commerce, Nov. 6, 2024)....................................... 1

*Ferrosilicon from Kazakhstan: Final Affirmative*
    *Determination of Sales at Less Than Fair Value*, 88 Fed.
    Reg. 88,007 (Dep't of Commerce, Nov. 6, 2024)......................................12

## I.   INTRODUCTION

Plaintiff TNC Kazchrome JSC ("Kazchrome") respectfully submits this reply to the response briefs filed in this case by defendant the United States ("Government") and defendant-intervenors CC Metals and Alloys, LLC and Ferroglobe USA, Inc (collectively, "Defendant-Intervenors") regarding the Final Determination issued by the U.S. Department of Commerce ("Commerce") in the countervailing duty ("CVD") investigation of ferrosilicon from the Republic of Kazakhstan (Case No. C-834-813).

Kazchrome has demonstrated in its opening brief that Commerce erroneously applied adverse facts available ("AFA") to Kazchrome because none of the threshold statutory criteria for the application of AFA were met. All information necessary for Commerce's subsidy analysis was on the record, and Kazchrome did not fail to cooperate in any way. Commerce's determination therefore is unsupported by substantial evidence on the record and otherwise not in accordance with the law. Specifically, Commerce's decision to impose a 265.53 percent duty, rather than the calculated company-specific rate of 2.37 percent, ignores and contradicts substantial record evidence demonstrating that

the so-called "missing" information was present on the record as of May 14, 2024, was not "necessary" for Commerce to make its determination, and did not reflect any failure to cooperate by Kazchrome.

In its response brief, the Government defends Commerce's decision to apply AFA in this investigation by asserting that Commerce was "deprived . . . of . . . opportunity," *see* Def. Br. at 22, 27, 31, 34, 35, 55, because of the so-called "missing" information. *See* Def. Br. at 20, 27, 30, 39. At the same time, the Government acknowledges that the information was submitted on May 14, 2024, *see* Def. Br. at 6 and 39-40, but that Commerce cannot be expected to have looked at it. *See* Def. Br. at 42-44. Instead, Commerce says it "discovered" the information in September 2024 at verification. *See* Def. Br. at 19, 26, 37, 52, 62. That is not the legal standard. There is no dispute that the same information had already been presented to Commerce on May 14, 2024.

As discussed in this reply, Commerce's final determination is arbitrary and capricious and is unsupported by substantial evidence. Because Commerce failed to consider the record evidence presented on May 14, 2024, and instead now claims that it "discovered" the same information months later at verification, Commerce's determination is

not supported by substantial evidence on the record and is otherwise contrary to law.

At the same time, Defendant-Intervenors argue that Commerce lawfully applied AFA because Kazchrome did not present the May 14, 2024, information itself. *See* Def.-Int. Br. at 32-34. Like Commerce, Defendant-Intervenors acknowledge that the May 14 information was confirmed at verification, *see* Def.-Int. Br. at 27, and its arguments fail for the same reasons. Ultimately, Defendant-Intervenors cannot demonstrate that Commerce lawfully applied AFA because Defendant-Intervenors are limited to the same factual record that demonstrates no information was missing and that Kazchrome fully cooperated. The Defendant-Intervenors' characterizations of Commerce's determination cannot now remedy a determination that is itself not supported by substantial evidence.

## II.   ARGUMENT

### A.    ERG's ownership was disclosed as of May 14, 2024

In its response brief, the Government asserts that Commerce lawfully applied AFA when it discovered that necessary information was missing from the record with respect to the Government of Kazakhstan's

3

investment in ERG. *See* Def. Br. at 20-21. Commerce, however, had this precise information from the beginning of the investigation – in fact, this information provided the basis for Commerce's review of Kazchrome as a respondent in the first place.

When Commerce initially sought to review TELF, Commerce learned from the company that (1) Kazchrome was the relevant party to examine as the producer, that (2) Kazchrome's ultimate parent was ERG, and that (3) ERG's ownership included a 40 percent stake by the Republic of Kazakhstan. Contrary to the Government's argument, *see* Def. Br. at 42, the May 14 TELF submission was germane to Commerce's inquiry to determine the relevant parties and the information TELF provided consisted of Kazchrome's and ERG's publicly available documents.

Specifically, on May 14, 2024, TELF reported:

> To be clear, TELF and Kazchrome are unaffiliated parties under the statute. While TELF and Kazchrome operate under a business agreement, they have no familial ties, share no officers, directors, or employees, and share no common owners.FN6

> FN6: According to Kazchrome's 2022 annual report (the latest available on its website), Kazchrome's immediate parent company is KCR International B.V., which owns 99.35 percent of its shares, and its ultimate parent is Eurasian Resources Group S.a.r.l ("ERG"). *See* **Exhibit 2** (Kazchrome 2022 Annual Report) at 55 and 115. ERG is in turn owned by Alexander

4

> Machkevitch (approximately 20 percent), Patokh Chodiev (approximately 20 percent), the heirs of Alijan Ibragimov (approximately 20 percent), and the Republic of Kazakhstan (40 percent). *See* **Exhibit 3** (ERG webpage).

*See* Letter from Cassidy Levy Kent (USA) LLP to the Hon. Gina Raimondo, *Ferrosilicon from Kazakhstan: TELF Comments on Company Address*, Case Nos. A-834-812 and C-834-813 (May 14, 2024), at 4, n.6, P.R. 50, Appx1797/C.R. 20, Appx1797 ("TELF's May 14, 2024 Submission"). Substantial evidence therefore contradicts the government's assertion that, as of September 3, "Commerce was unaware . . . that the GOK had 'a 40 percent ownership of ERG.'" *See* Def. Br. at 26.

In fact, the record demonstrates that Commerce reviewed this information, considered these facts, and made a determination to examine Kazchrome as the producer, knowing that Kazchrome's ultimate parent was ERG and that the ROK held at 40 percent ownership share in ERG. Then approximately five months later, Commerce verified the same facts reported on May 14. The fact that Commerce appears not to have noticed this before does not mean that it was disclosed. The Government cannot support its assertion that "Commerce first discovered the true nature of ERG and the GOK's

relationship at verification, including that the GOK owned 40 percent of ERG.'" *See* Def. Br. at 26. Commerce had complete information from the beginning of the investigation, as of May 14, 2024 – and the information obtained at verification only confirmed the same. *See* TELF's May 14, 2024 Submission, at 4, n.6 and Exhibit 3, P.R. 50, Appx1797-Appx1800/C.R. 20, Appx1797-Appx1800.

In its response brief, the Government argues that Commerce cannot be expected to review everything on its record. *See* Def. Br. at 39 and 42. Whether or not this is true under certain circumstances, it is not the case here that this ownership information was a data point buried in a voluminous submission. It was in a letter of five pages that formed the basis of a change in respondent selection. The Government argues that it cannot be expected to have known this information because it was contained in a footnote. *See* Def. Br. at 17, 19, 39, 40, 41. But the text of the submission is perfectly clear: "ERG is in turn owned by . . . the Republic of Kazakhstan (40 percent)". TELF's May 14, 2024 Submission, at 4, n.6 and Exhibit 3, P.R. 50, Appx1797-Appx1800/C.R. 20, Appx1797-Appx1800. In addition to this statement, the submission included supporting exhibits. *See id.* at Exhibit 3. The law does not permit

6

Commerce to set aside or disregard properly submitted record evidence on grounds that it was in a footnote with exhibits. As such, the Government's position only acknowledges that it had the information regarding ownership on the record prior to verification, and the verification therefore did not result in any newly discovered or previously undisclosed facts.

### B. Commerce was not deprived of an opportunity to investigate ERG's ownership

In its final determination, Commerce concluded that the foregoing information (namely that "ERG is in turn owned by . . . the Republic of Kazakhstan (40 percent)") had been missing from the record and was necessary information for Commerce to make its final determination. *See* IDM at 6. Not only is this factually untrue as the May 14 information demonstrated that "ERG is in turn owned by . . . the Republic of Kazakhstan (40 percent)"), it is also crucial for the Court's analysis because Commerce's decision to apply AFA turned on its finding that it had not previously known the ownership interest. In other words, if the evidence was not in fact new information, then the Government has no grounds to inflate Kazchrome's rate to more than

250%. The Government's concession that the information was on the record but that Commerce effectively had not seen it prior to verification is plain grounds for vacatur.

The Government further cannot support its position that Kazchrome "deprived Commerce of the opportunity to request more information about the relationship and any subsidies between the GOK and ERG, creating a gap in the record going to the heart of the subsidization inquiry." *See* Def. Br. at 22. In fact, the information Commerce obtained at verification *confirmed* the previously reported "40 percent" ownership was the correct number; thus, there is no discrepancy, much less a gap. *See* Verification Report at 2, Appx2927. Commerce reported that at verification, "[t]he information provided indicates that ERG, and therefore Kazchrome, is ultimately owned by three private individuals, and the Government of Kazakhstan (GOK) who holds a 40 percent share in ERG. This information was previously unreported." *See id.* at 2.

Commerce's statement that the "information was previously unreported" is not supported by substantial evidence because the May 14 information included the same facts that the company "is ultimately owned by three private individuals, and the Government of Kazakhstan

8

(GOK) who holds a 40 percent share in ERG." *See* Verification Report at 2, Appx2927.

Commerce cannot and does not assert that it did not have knowledge, but argues only that Commerce cannot be obligated to read everything on the record. *See* Def. Br. at 19 ("Commerce cannot be required to examine a different party's submission on an unrelated topic"). In certain past cases, Commerce has encountered difficulties with data it considers to be buried in a voluminous submission, but an objection on that basis should not be accepted here under the facts of this case. *See, e.g.*, Def. Br. at 47 ("a party cannot hide behind voluminous and inaccurate reporting") (citing *Sugiyama Chain Co. v. United States*, 797 F. Supp. 989 (Ct. Int'l Trade 1992) and *Corinth Pipeworks Pipe Indus. SA v. United States*, 633 F. Supp. 3d 1314 (Ct. Int'l Trade 2023)); *cf.* Pl. Br. at 47-52 (distinguishing these cases).

Here, there is no credible basis to suggest the information was obfuscated or buried in a voluminous submission or otherwise difficult to discern. The Government's reliance on *Sugiyama Chain* and *Corinth Pipeworks* is misplaced because both cases concern difficult and convoluted records. Contrary to the Government's argument, in

*Sugiyama Chain*, the Court did not state that Commerce has no obligation to review numerous and voluminous submissions of data, but rather observed that "Commerce receives numerous and voluminous submissions of such data during an administrative proceeding. Not uncommonly, submissions contain various discrepancies which would be entirely impracticable for Commerce to sort out." *Sugiyama Chain*, 797 F. Supp. at 994 (referring to "thousands of data entries").

Likewise in *Corinth Pipeworks*, Commerce faced a situation in which the respondent submitted a multistep reconciliation that deviated from "Commerce's 'preferred reconciliation structure'" which was confusing and required "Commerce to sift through unrequested and irrelevant information." *Corinth Pipeworks*, 633 F. Supp. 3d at 1326; *see id.* at 1324 ("Merely providing a bulk of information does not constitute a response to inquiries requesting that a party clearly explain how its submitted cost data reconcile to their audited financial statement COM.").

Here, in contrast, Commerce argues that it cannot be expected to have known what was on the record with respect to a straightforward narrative submission with supporting exhibits germane to the question of corporate ownership. *See* Def. Br. at 42 (arguing that Kazchrome did

10

not "cite any authority for the proposition that Commerce needs to sift through submissions"); *id.* at 43 ("Kazchrome seeks to place blame on Commerce for not divining information").

Commerce offers reasons such as: the information was contained in a footnote; or the information was submitted by another party. *See* Def. Br. at 19. As demonstrated above, however, neither reason is persuasive. As explained, the disclosure was first made in the beginning of the proceeding on page 4 of a five-page narrative submission, and again in Exhibit 3 of that same submission. *See generally* TELF's May 14, 2024 Submission, P.R. 50, Appx1794-Appx1800/C.R. 20, Appx1794-Appx1800. And this information was then further supported by narrative explanations included in all of Kazchrome's financial statements. *See* Kazchrome's June 17, 2024 Questionnaire Response, at Exhibits GEN-2 through GEN-6 and GEN-14, P.R. 107-113, Appx1880-Appx2096, Appx2386-2420/C.R. 32-57, Appx1880-Appx2096, Appx2386-2420. The information provided was clear, unambiguous, and consistent – a reasonable investigating authority would have been aware of this information.

11

The Court may also consider taking judicial notice of the contemporaneous antidumping (AD) investigation in which Commerce rejected the petitioner's argument that the Government of Kazakhstan's ownership interest in ERG was relevant. *See Ferrosilicon from Kazakhstan: Final Affirmative Determination of Sales at Less Than Fair Value,* 89 FR 88007 (November 6, 2024) (*Final AD Determination*), and accompanying Issues and Decision Memorandum (AD IDM) at 17-19 ("The petitioners also contend that they did not learn about the government of the Republic of Kazakhstan's (GOK) indirect ownership of Kazchrome until they received the ERG financial statements . . . nine days before the preliminary determination date. However . . . . the notes to Kazchrome's consolidated financial statements, which were submitted as a public document on July 8, 2024, list Kazchrome's "related party transactions" with the GOK, thereby disclosing that the company had an affiliation with the government. Moreover, it is not clear why Kazchrome's affiliation with the GOK was necessary for the petitioners [to file further allegations].") (internal citations omitted).

In that parallel investigation, Commerce found that Kazchrome had *not* failed to cooperate under similar circumstances; instead, Commerce

took a position *rejecting* petitioner's allegations. Given the similar and

parallel considerations, Commerce's position in the AD investigation is

reproduced below to illustrate the stark contrast in conclusions based on

nearly identical facts:

> **Commerce's Position:** . . . . The petitioners allege that
> Kazchrome should have provided the financial statements for its
> ultimate parent, ERG, in its initial section A response, and that
> failure to do so impeded the investigation because the financial
> statements provided a wealth of new factual information
> regarding ownership structure and affiliated party transactions
> that had not been previously disclosed. We disagree. In
> responding to Commerce's initial questionnaires, Kazchrome
> provided its own financial statements, its affiliated suppliers'
> financial statements, its ownership structure, and information
> regarding the Kazchrome's POI transactions with affiliated
> parties. Kazchrome provided a legal organization structure
> identifying the subsidiaries included within Kazchrome's
> consolidated financial statements, as well as, identifying the
> direct owners of Kazchrome. Similarly, Kazchrome provided a
> list of affiliated entities and shareholders that identified
> whether an affiliate or shareholder provided Kazchrome with
> inputs for the production of ferrosilicon. In providing this
> information, Kazchrome identified ERG as its ultimate parent
> company. While Kazchrome did not provide a copy of ERG's
> financial statements, Commerce's section A questionnaire only
> requested financial statements of affiliated parties involved in
> the production and sales of the merchandise under
> consideration. During the POI, ERG did not directly provide any
> inputs to Kazchrome, and was only the ultimate, not direct,
> parent of affiliated parties that provided major inputs to
> Kazchrome (e.g., Kazchrome's affiliated supplier of electricity).
> As a result, we do not find that Kazchrome failed to comply with
> Commerce's section A instructions in not providing ERG's

financial statements. Moreover, when requested in a supplemental question, Kazchrome provided the ERG financial statements. Therefore, we find that Kazchrome did not impede the investigation by failing to provide information requested by Commerce.

The petitioners also allege that by providing ERG's financial statements late in the proceeding, Kazchrome prevented Commerce's ability to properly evaluate the reporting of major and minor inputs. . . . In fact, the ERG financial statements were submitted on October 4, 2024, well in advance of the October 31, 2024 *Preliminary Determination*, and therefore provided ample time for Commerce's and the petitioners' review of the information. Moreover, the ERG financial statements did not provide new factual information about affiliated party transactions with Kazchrome. Therefore, we disagree that Kazchrome impeded the investigation or hindered Commerce's ability to analyze affiliated party transactions. Rather, we find that Kazchrome acted to the best of its ability in providing timely and complete responses, and the information could be used without undue difficulties.

Finally, the petitioners allege that Kazchrome's failure to include the financial statements of Kazchrome's ultimate parent, ERG, with the initial questionnaires denied the petitioners the ability to allege a PMS within the established time limit. The petitioners also contend that they did not learn about the government of the Republic of Kazakhstan's (GOK) indirect ownership of Kazchrome until they received the ERG financial statements on October 22, 2024, or nine days before the preliminary determination date. However, we note that Kazchrome provided the ERG financial statements on October 4, 2024, in its first supplemental section D questionnaire response, and not on October 22, 2024.84 Additionally, the notes to Kazchrome's consolidated financial statements, which were submitted as a public document on July 8, 2024, list Kazchrome's "related party transactions" with the GOK, thereby

14

disclosing that the company had an affiliation with the
government. Moreover, it is not clear why Kazchrome's
affiliation with the GOK was necessary for the petitioners to file
a PMS allegation, which is an allegation of market-based rather
than of company-specific distortions. As a result, we disagree
with the petitioners that because the ERG financial statements
were not provided in Kazchrome's initial section A or D
questionnaires, the petitioners were denied the ability to allege
a PMS.

Therefore, based on the foregoing analysis, we do not find that
the criteria outlined in sections 776(a)(1) and (2) of the Act are
present in this case. There is no information missing from the
record that was requested by Commerce. Further, we do not find
that Kazchrome withheld information that has been requested
by Commerce or failed to provide such information in a timely
manner or in the form or manner requested. Rather, as
discussed above, Kazchrome provided the information requested
by Commerce in a timely manner and the information was
verifiable. Therefore, we do not agree with the petitioners that
Kazchrome significantly impeded the investigation or failed to
act to the best of its ability. Rather, we find that Kazchrome did
not withhold information, but provided the information
requested by Commerce in a timely manner. Consequently, for
the final determination, we do not find that the application of
facts available, much less the application adverse inferences
under section 776(b) of the Act, partial AFA to Kazchrome is not
[*sic*] warranted.

*See* AD IDM at 17-19.

Commerce's assessment of similar allegations and facts in the

parallel antidumping investigation resulted in a reasonable conclusion

that Kazchrome had fully cooperated, that no necessary information was

15

missing from the record, and that neither Commerce nor the petitioners had been deprived of any opportunity to comment or investigate further regarding Kazchrome's corporate structure, including ERG. In contrast, Commerce's assessment in the CVD investigation reached the opposite – and arbitrary – conclusion.

In past instances where Commerce has applied AFA on arbitrary grounds, the Court of Appeals for the Federal Circuit has reversed this Court's decisions upholding Commerce's determinations. For example, in *Tau-Ken Temir LLP v. United States*, 147 F.4th 1363, 2025 U.S. App. LEXIS 19510 (Fed. Cir. 2025), the Federal Circuit reversed this Court's decision to uphold Commerce's use of total AFA against a respondent who filed their submission 1 hour and 41 minutes past the deadline. *See id.* Commerce's ability to apply AFA is not unbounded. *See also, e.g., Meihua Grp. Int'l Trading (H.K.), Ltd. v. United States*, 686 F. Supp. 3d 1359, 2024 Ct. Intl. Trade LEXIS 21 (Ct. Int'l Trade 2024) (reversing as unreasonable Commerce's determination that respondent withheld information).

16

**C.    Commerce's AFA determination is unlawful because no "gap" existed on the record and Kazchrome fully cooperated at all times**

1.  <u>No "gap" existed because no information was missing</u>

In its response brief, the Government argues that "Commerce did not have enough information to ask important follow up questions to discern the nature and extent of the relationship between the GOK and Kazchrome's parent company," Def. Br. at 54, and that this "prevented Commerce from seeking more information as to the relationship between the GOK and ERG." Def. Br. at 19-20. As noted, however, the May 14 information demonstrated that "ERG is in turn owned by . . . the Republic of Kazakhstan (40 percent)"). Because the May 14 information provided the same detail Commerce says it "discovered" at verification, it is not the case that Commerce was "prevented from seeking more information," Def. Br. at 19-20, nor is it the case that Commerce did not have enough information "to ask important follow up questions." Def. Br. at 54. Because the May 14 submission provided this very information, there is no "gap" in Commerce's record, nor was Commerce prevented

17

from asking further questions about ROK's ownership stake in ERG, as reported on May 14, 2024.

In addition – and independently sufficient – financial statements that Kazchrome submitted with its June 17, 2024, response to the remaining portions of the Section III questionnaire also disclosed the Government of Kazakhstan's interest in ERG. *See* Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Ferrosilicon from Kazakhstan: Section III Response Part I*, Case No. C-834-813 (Jun. 17, 2024), at Exhibits GEN-2 through GEN-6 and GEN-14, P.R. 107-113, Appx1880-Appx2096, Appx2386-2420/C.R. 32-57, Appx1880-Appx2096, Appx2386-2420 ("Kazchrome's June 17, 2024 Questionnaire Response"). Thus the record contained sufficient information in multiple forms to allow Commerce to pursue any further inquiry it deemed necessary and no "gap" existed on the record. Under the plain language of 19 U.S.C. § 1677e(a), "it is clear that Commerce can only use facts otherwise available to fill a gap in the record," *Zhejiang Dunan Hetian Metal Co., Ltd. v. United States*, and that Commerce may not otherwise apply facts available "in disregard of information of record that is not missing or otherwise deficient." *Zhejiang Dunan Hetian Metal Co.*, 652 F.3d at 1348 (*quoting Gerber*

*Food (Yunnan) Co. v. United States*, 387 F. Supp. 2d 1270, 1288 (Ct. Int'l Trade 2005)).

2. <u>The Government has failed to rebut the applicability of the transnational regulation in effect at the time</u>

The alleged "missing" information was not necessary for Commerce's determination nor could it be understood as such given Commerce's self-imposed restriction on transnational subsidies in effect at the time. The Government concedes that "at the time that Commerce initiated this investigation, Commerce's regulations stated that 'a subsidy does not exist if the Secretary determines that funding for the subsidy is supplied . . . by a government of a country other than the country in which the recipient firm is located.'" Def. Br. at 28 (footnote and emphasis omitted). Yet, it asserts that "Commerce was prevented from even determining whether the transnational subsidies regulation applied," because, according to Commerce, it only learned of ERG's ownership information at verification. Def. Br. at 28; *see also* Def.-Int. Br. at 3, 22-23. The Government further speculates that Commerce "could have" considered the applicability of 19 C.F.R. § 351.527(a) "if Commerce had

19

the opportunity to request more information." Def. Br. at 34. In other words, it was not required or necessary.

The government's argument regarding the applicability of 19 C.F.R. § 351.527(a) is telling in that the government can only speculate that Commerce "could have" considered that regulation. The Government does not assert that the ERG ownership information was necessary – nor does Commerce. In fact, neither Commerce nor the Government have demonstrated that any necessary information was missing from the record, given that the May 14 information reflects the same information confirmed at verification.

Nor is there merit to Defendant-Intervenor's argument that Kazchrome's position on 19 C.F.R. § 351.527(a) would "impermissibly circumscribe" Commerce's ability to investigate subsidies and otherwise undermine the CVD law. Def. Int. Br. at 25; *see also id.* at 30-31. The regulation at the time stated clearly that a subsidy would not be found in these circumstances; the fact that public policy considerations led to subsequent changes in the regulation does not change the applicability of that regulation to this investigation. Taken together with the Government's recognition that "at the time . . . Commerce's regulations

20

stated that 'a subsidy does not exist if . . . supplied . . . by a government of a country other than the country in which the recipient firm is located," Def. Br. at 28, it is clear that Commerce would not have been examining such a fact pattern for non-countervailable subsidies – and thus the alleged "missing" information would not be considered necessary on these grounds either. *See* 19 U.S.C. § 1677e(a)(1); *see also Clearon Corp*, 359 F. Supp. 3d 1344, 1360 (Ct. Int'l Trade 2019) ("Therefore, Commerce's use of facts available cannot be sustained because the Department has failed to show that the information it seeks is necessary to its determination.").

### 3. Commerce's instruction to report corporate structure "etc." does not provide a basis to apply AFA

The Government cannot support its litigation position that Kazchrome failed to cooperate because the information it provided did not adequately respond to Commerce's "use [of] 'etc.'" in the questionnaire instructions. *See* Def. Br. at 28, n.3 ("Commerce's instructions do not limit the definition of "ultimate owners" to "parent/grandparent companies" as they use "etc." immediately following "grandparents"."). Commerce cannot rely on the use of "etc." as a basis to

21

find non-cooperation and apply AFA. To do so when Kazchrome did in fact comply by providing the requested information would be arbitrary and capricious.

Kazchrome's responsive submissions were more than adequate to comply with Commerce's request. In the affiliated companies portion of the Initial Questionnaire, Kazchrome followed Commerce's instructions and identified ERG and the nature of ERG's affiliation to Kazchrome. *See* Kazchrome's Affiliated Companies Response, at 2, 4 and Exhibit AFFIL-1, P.R. 77, Appx1837, Appx1839-Appx1848/C.R. 26, Appx1837, Appx1839-Appx1848. When Commerce issued an Affiliation Supplemental Questionnaire on June 7, 2024, in which it requested that Kazchrome provide a "chart…starting with Kazchrome, its ultimate owners (parent holding companies, grandparents, etc.), and companies in which Kazchrome may own a percentage," Kazchrome provided this chart identifying all parent entities, including its ultimate parent, ERG, and all companies in which Kazchrome may own a percentage based on its understanding of Commerce's express request for parent companies. *See* Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Ferrosilicon from the Republic of Kazakhstan: Affiliation Supplemental*

22

*Questionnaire Responses*, Case No. C-834-813 (Jun. 13, 2024), at Exhibit AFFILSUPP-2, P.R. 97-98, Appx1866-Appx1868/C.R. 29, Appx1866-Appx1868 ("Kazchrome's Affiliation Supplemental Questionnaire Responses"). Because there were no other parent entities above ERG, Kazchrome's organizational chart ended with ERG as the ultimate parent. *See id.*, P.R. 97-98, Appx1866-Appx1868/C.R. 29, Appx1866-Appx1868. Once Kazchrome provided its structure chart in response to Commerce's Affiliation Supplemental Questionnaire, Commerce gave Kazchrome no indication that any aspect of this chart was deficient.

In the context of assessing the adequacy of notice provided by Commerce's questions, this Court has held that, "[w]hile Commerce need not use certain 'magic words' to alert a respondent to a deficiency, these generic and widely-issued supplemental questionnaires are the type of '[b]roadly drawn' questionnaires that do not provide notice of any particular deficiency and therefore deprives respondents of the opportunity to remedy later-identified deficiencies. *Shelter Forest Int'l Acquisition v. United States*, 2026 Ct. Intl. Trade LEXIS 14 (Jan. 28, 2026) at *35-36 (citing *Hyundai Steel Co. v. United States*, 45 CIT __, __, 518 F. Supp. 3d 1309, 1322 and 1326 (2021)); *see also* Saha Thai Steel

23

*Pipe Pub. Co. v. United States*, 605 F. Supp. 3d 1348, 1369 at 1363 (it is

Commerce's responsibility to "clearly and definitively ask for what it

wants.").

> 4. <u>Commerce failed to meet the statutory threshold for relying on facts otherwise available</u>

As demonstrated above, Commerce failed to satisfy either of the

prerequisite requirements for relying on facts available. *See* 19 U.S.C. §

1677e(a) (those conditions are: (1) necessary information is not available

on the record; or (2) a respondent has (i) withheld requested information,

(ii) failed to provide requested information by the established deadlines

or in the form and manner requested (subject to 19 U.S.C. § 1677m(c)(1)

and (e)), (iii) significantly impeded the proceeding, or (iv) provided

unverifiable information.). Where these statutory prerequisites are not

met, Commerce cannot disregard the submitted information and apply

FA or AFA. Because Commerce failed to demonstrate satisfaction of

either of the statutory prerequisites, Commerce's determination to rely

on FA or AFA is not in accordance with law.

In addition, Commerce has failed to substantiate its finding that

Kazchrome "failed to cooperate by not acting to the best of its ability to

24

comply with a request for information." 19 U.S.C. § 1677e(b)(1). An adverse inference "may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made." *Nippon Steel Corp.*, 337 F.3d at 1383. Here, Kazchrome fully cooperated, provided the requested information on a timely basis, and confirmed the accuracy of its corporate ownership information at verification. Because the circumstances that warrant the application of total AFA are reserved for situations "'where none of the reported data is reliable or usable' because, for example, all of the 'submitted data exhibited pervasive and persistent deficiencies that cut across all aspects of the data,'" Commerce's decision to apply a 265 percent 'total AFA' rate is unreasonable, unsubstantiated, and not in accordance with law. *See Mukand, Ltd. v. United States*, 37 C.I.T. 443, 452 (Ct. Int'l Trade 2013), *aff'd* 767 F.3d 1300 (Fed. Cir. 2014) (emphasis added, citations omitted); *see also Zhejiang Dunan Hetian Metal Co.*, 652 F.3d at 1348 (*citing Steel Authority of India, Ltd. v. United States*, 149 F. Supp. 2d 921, 928-929 (Ct. Int'l Trade 2001)). The use of total AFA is not supported by a record where a respondent has responded to all of Commerce's questionnaires

25

with reliable and usable information, where the respondent did so within the established deadlines, and where Commerce verified the accuracy of the information, as is the case here.

### D. Commerce's determination should be remanded to reverse the AFA finding and conclude no subsidy benefits were provided to Kazchrome

As demonstrated above, Commerce's decision to apply AFA was unsupported by fact and law. Accordingly, Commerce's determination should be remanded to reverse the AFA finding and instead calculate the appropriate rate based on the facts on the record. To that end, as set out in Kazchrome's opening brief, to the extent Commerce revisits its decision to apply AFA to Kazchrome on remand and properly calculates a rate using data on the record, Commerce must also reverse its position from the Preliminary Determination and find that the corporate income tax exemption for the Ferrochrome Priority Investment Project was tied to the production, sale, and export of ferrochrome (*i.e.*, non-subject merchandise), and did not benefit the overall operations of the company. As a result, Commerce must find that this program did not provide a countervailable benefit to Kazchrome in this investigation. The corporate income tax exemption for the Ferrochrome Priority

26

Investment Project was tied to the production, sale, and export of ferrochrome (*i.e.*, non-subject merchandise), and did not benefit the overall operations of the company. *See* Kazchrome's June 20, 2024 Questionnaire Response, at Exhibits SQA PRIORITY-2 through SQA PRIORITY-6, P.R. 115, Appx2688-Appx2779/C.R. 56-57, Appx2688-Appx2779. Should Commerce be required to reconsider its AFA decision and to use Kazchrome's responses on the record, it must address this issue.

## III.   CONCLUSION

For the reasons explained above, Kazchrome respectfully requests that this Court enter judgment on the agency record in its favor.

Dated: May 1, 2026                   Respectfully submitted,

/s/ *Christine M. Streatfeild*
Christine M. Streatfeild
Nathaniel J. Halvorson
**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff TNC Kazchrome JSC*

27

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the attached Reply Brief in Support of Plaintiff TNC Kazchrome JSC's Rule 56.2 Motion for Judgment on the Agency Record, filed May 1, 2026, contains 5,291 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum 7,000 word count limitation set forth in the Scheduling Order issued by the Court on October 1, 2025 (ECF No. 31).

Dated: May 1, 2026                Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Nathaniel J. Halvorson
**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff TNC Kazchrome JSC*

## <u>CERTIFICATE OF COMPLIANCE REGARDING NON-USE OF GENERATIVE ARTIFICIAL INTELLIGENCE</u>

Pursuant to this Court's instructions for Document Formatting and ECF Filing (Sept. 19, 2025), counsel for Plaintiff TNC Kazchrome JSC certifies that this Reply Brief in Support of Plaintiff TNC Kazchrome JSC's Rule 56.2 Motion for Judgment on the Agency Record, filed May 1, 2026 was not prepared with the assistance of a generative artificial intelligence program based on natural language prompts – such as, but not limited to, ChatGPT or Google Bard.

Dated: May 1, 2026          Respectfully submitted,

/s/ Christine M. Streatfeild
Christine M. Streatfeild
Nathaniel J. Halvorson
**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff TNC Kazchrome JSC*