**Slip Op. 26-109**

**UNITED STATES**
**COURT OF INTERNATIONAL TRADE**

**Court No. 25-00128**

TNC KAZCHROME JSC,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

CC METALS AND ALLOYS, LLC, and
FERROGLOBE USA, INC.

*Defendant-Intervenors*.

Before: M. Miller Baker, Judge

**OPINION**

[Granting Plaintiff's motion for judgment on the agency record.]

Dated: September 10, 2026

*Christine M. Streatfeild*, *Justin R. Becker*, *Lauren Shapiro*, and *Nathaniel J. Halvorson*, Baker & McKenzie, LLP, Washington, DC, on the briefs for Plaintiff.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of

Justice, Washington, DC, on the brief for Defendant. Of counsel for Defendant was *Elliott Brewer*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, Washington, DC.

*Adam H. Gordon* and *Benjamin J. Bay*, The Bristol Group PLLC, Washington, DC, on the brief for Defendant-Intervenors.

*Baker*, Judge: In this countervailing duty case,[1] TNC Kazchrome JSC, a Kazakhstani metal producer, challenges the Department of Commerce's decision to apply total adverse facts available based on the company's untimely disclosure that its government owned a substantial share of its corporate parent, Eurasian Resources Group S.a.r.l (ERG). *See* 19 U.S.C. §§ 1677e(a), (b); *see also Dalian Meisen Woodworking Co. v. United States*, 571 F. Supp. 3d 1364, 1370–74 (CIT 2021). In its motion for judgment on the agency record, Kazchrome argues, among other things, that the agency breached its statutory duty under 19 U.S.C. § 1677m(d) to give notice and an opportunity to cure any deficiency justifying the use of facts otherwise available. *See* ECF 61, at 54–58.

The government responds that § 1677m(d) does not apply under the circumstances of this case and asserts that even if it did, the Department satisfied it by issuing a supplemental questionnaire. ECF 58, at 47–48. Its theory for the former proposition is that Commerce had no reason to suspect there was a deficiency in the

---

[1] The court has jurisdiction under 28 U.S.C. § 1581(c).

company's questionnaire responses. *Id.* at 48. The government says the agency "clearly and definitively" asked for what it wanted—"Kazchrome's entire ownership and affiliation structure"—and the company "certified that it had provided" that information. *Id.* at 49. "It was not until verification," the government argues, that the Department had any reason to know, "from Kazchrome's own reporting," that the information was inaccurate. *Id.* at 50. Thus, it contends, Commerce had no obligation to allow the company to remedy the deficiency,[2] although it also claims the supplemental questionnaire offered such an opportunity. ECF 58, at 50 (citing *ABB Inc. v. United States*, 355 F. Supp. 3d 1206, 1222–23 (CIT 2018)).

On reply, Kazchrome cites case law for the proposition that an anodyne supplemental questionnaire is not sufficient notice. "While Commerce need not use certain 'magic words' to alert a respondent to a deficiency, . . . generic and widely-issued supplemental questionnaires are the type of 'broadly drawn' questionnaires that do not provide notice of any particular deficiency and therefore deprive[ ] respondents of the

[2] To the extent the government's theory is that the Department is excused from complying with § 1677m(d) when it discovers the problem at verification, that argument fails because the Federal Circuit has rejected it. *See Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022) ("The government states in its brief that Commerce was not required to permit Hyundai to provide additional information because the deficiency in question was not determined until 'verification.' However, the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified.") (citation omitted).

opportunity to remedy later-identified deficiencies." *Shelter Forest Int'l Acquisition, Inc. v. United States*, 831 F. Supp. 3d 1304, 1327 (CIT 2026) (cleaned up), *cited in* ECF 63, at 23.

The court agrees with Kazchrome. First, § 1677m(d) applies here because the Department should have called out the deficiency in the company's answer to the original affiliation questionnaire. Despite the clear request for a complete response for all related companies, including parents, the producer refused to comply: "Because none of these parent companies are Kazakhstani companies or located in Kazakhstan, Kazchrome understands that they are not required to respond to the questionnaire." Appx1839. That language was enough to trigger Commerce's obligation to notify the company that its "understanding" was wrong, if in fact the questionnaire did require information about the parents.

Second, the supplemental questionnaire here did not provide notice under § 1677m(d). A supplemental questionnaire does not satisfy the Department's statutory obligation when it mentions "nothing about any error" and "fail[s] to use language that would alert the respondent to a deficiency in a prior response." *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1326 (CIT 2021).

That is the situation here. The supplemental questionnaire merely stated that Commerce had "identified certain areas of Kazchrome's response that require additional information," Appx1856, but it neither referred to any deficiencies nor—more

importantly—stated that the previous response had not complied with instructions. *See also NSK Ltd. v. United States*, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007) (holding that the agency satisfied § 1677m(d) "when it issued a supplemental questionnaire *specifically pointing out and requesting clarification of*" deficient responses) (emphasis added).

While the government quotes *Bebitz Flanges Works Private Limited v. United States*, 433 F. Supp. 3d 1297, 1306 (CIT 2020), for the proposition that "intentional obtuseness on the part of a respondent does not obviate Commerce's clear request for the relevant information," ECF 58, at 49 (brackets omitted), that case is quite different. In *Bebitz*, as here, the answer gave the Department reason to believe that an identified company was cross-owned, but it did not include a response on behalf of that company. 433 F. Supp. 3d at 1301. The agency then issued a supplemental questionnaire that specifically asked for a complete response from that company or a detailed description of why it should not be considered cross-owned. *Id.*[3]

Here, by contrast, when presented with Kazchrome's express statement that it need not and would not submit responses on behalf of its parents, Commerce's response was stoney silence.

The company's statement, in turn, distinguishes this case from *ABB*, where the court held that § 1677m(d) does not require the Department to issue a

[3] The respondent did not comply despite receiving multiple extensions of time. *Id.* at 1305.

supplemental questionnaire when a party provides "seemingly complete, albeit inaccurate, information." 355 F. Supp. 3d at 1222. The fact that Kazchrome affirmatively declined to submit the requested information about its parents means its answers were not "seemingly complete."

Commerce, for its part, mentioned § 1677m(d) only once in its final decision, and it did so only in passing while stating the legal standard for the use of facts otherwise available. *See* Appx1309 (referring to section 782(d) of the Tariff Act). In other words, it made no effort at all to show that it complied with its obligations under that section.

Instead, it pointed the finger at Kazchrome, alleging that the company "waited until verification" to "report the additional layers of ownership," including the Kazakhstani government's 40-percent share of ERG. Appx1311. The agency claims—correctly, to be sure—that it is unreasonable to expect it to have divined ERG's ownership from a footnote in TELF's submission and opaque references buried in Kazchrome's financial statements. But none of that excuses its failure to correct the latter company's "understanding"—or, more properly, "misunderstanding"—about what the questionnaire required it to submit. *That* information was neither buried in the record nor otherwise unclear. Kazchrome said straight-out that it would not submit a complete response for ERG. If, indeed, the questionnaire required such information, Commerce needed to advise the company that its answer was deficient.

In sum, even if the Department were otherwise justified in applying facts otherwise available, it broke the law because it failed to satisfy its obligation to give notice of deficiency and an opportunity to cure under § 1677m(d). That requires a remand for the agency to do so.

Because Commerce so breached its statutory duty, it cannot rely on Kazchrome's late disclosure as the basis for refusing to evaluate the applicability of 19 C.F.R. § 351.527(a)[4] to any subsidies provided to ERG, a Luxembourg entity. On remand, the Department must reconsider the company's invocation of that regulation. Similarly, Commerce must also entertain Kazchrome's argument that any benefit the company received from a tax exemption should not be included in the subsidy-rate calculation because it was not attributable to subject merchandise.

* * *

[4] When it was in force, this regulation provided that "a subsidy does not exist if the Secretary determines that [its] funding . . . is supplied . . . [b]y a government of a country other than the country in which the recipient firm is located." 19 C.F.R. § 351.527(a). The Department rescinded it effective April 24, 2024. *See* 89 Fed. Reg. 20,766, 20,766, 20,768, 20,826–27. The countervailing duty petitions here were filed on March 28, 2024, so the regulation's repeal does not affect this case.

The court grants Kazchrome's motion for judgment on the agency record and remands for further proceedings consistent with this opinion.

Dated: September 10, 2026 /s/ *M. Miller Baker*
New York, NY Judge